**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **JASON TIMOTHY and JESSICA** | ) | |
| **TIMOTHY** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **02:12-cv-732** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court is the DEFENDANT STATE FARM FIRE AND CASUALTY

COMPANY'S MOTION TO DISMISS COUNTS II, III, AND IV OF PLAINTIFFS'

AMENDED COMPLAINT, with brief in support (Document No. 6).  Plaintiffs have filed a

response in opposition (Document No. 10), to which Defendant has replied (Document No. 11).

The motion is ripe for disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Plaintiffs' Amended Complaint and exhibits attached

thereto.  This action arises out of an insurance claim submitted to State Farm by Jason and

Jessica Timothy in 2011.  On or about March 23, 2011, Plaintiffs' home was damaged due to an

alleged tornado, high winds, and hail in the area of their home at 228 South 4th Street in

Youngwood, Pennsylvania.  Am. Compl. ¶¶ 1, 8.  At the time, Plaintiffs maintained a

homeowner's insurance policy with Defendant that was to provide benefits for damage to their

property caused by a weather event.  Am. Compl. ¶ 5.  Pursuant to the policy, Plaintiffs filed a

claim with Defendant for property damage. Am. Compl. ¶ 9. The damage to Plaintiffs' home was inspected by Defendant's employee, Independent Adjuster Manuel Crispin ("Crispin"), and on November 7, 2011, Plaintiffs were mailed a check in the amount of $250.80[1] as compensation for their claim. Am. Compl. ¶¶ 10, 11. A copy of the letter to Plaintiffs from Crispin is attached to Plaintiffs' Amended Complaint as Exhibit 1.

Plaintiffs subsequently informed Defendant that their home sustained damages in excess of those assessed by Crispin, noting that they had found roof shingles in their yard. Am. Compl. ¶¶ 13, 14. A second inspection of Plaintiffs' property was performed by Defendant's employee, Independent Adjuster Michael St. John ("St. John") on March 1, 2012. Am. Compl. ¶ 15; Am. Compl. Ex. 2. On March 7, 2012, St. John sent a letter to Plaintiffs detailing the results of his inspection, and estimated damages at $796.94.[2] Am. Compl. Ex. 2. The letter from St. John includes greater detail regarding the damage to Plaintiffs' home that he observed during the inspection. Am. Compl. Ex. 2.

The letter reflects, in relevant part, as follows: (1) St. John noted covered damages to two aluminum power vent covers and a window; (2) St. John did not find wind or hail damage to the shingles; (3) Plaintiff's contractor, Christopher Lowance ("Lowance") from Bella Construction, participated in parts of the inspection and accompanied St. John onto the roof over the kitchen; (4) Lowance agreed with St. John that there was no wind or hail damage to the shingles or any part of the roof over the kitchen; (5) Lowance observed that the flashing between the kitchen roof and the adjacent wall was poorly installed, and likely resulted in the leak in Plaintiffs'

---

[1] The amount of the check included the total damages assessed by Crispin less Plaintiffs' $500.00 deductible. Am. Compl. ¶ 11.

[2] Plaintiffs indicate that St. John placed a value of the damages to their home at $386.89, which was "below the $500.00 deductible." Am. Compl. ¶ 16. The Court notes, however, that the letter sent to Plaintiffs from St. John, Am. Compl. Ex. 2, estimates damages at $796.94. Less recoverable depreciation of $46.14 and Plaintiffs' deductible of $500.00, the total amount of damages to be paid by Defendant according to St. John was $250.80, consistent with the first estimate. Am. Compl. Ex. 2.

kitchen; (6) St. John showed Lowance and Plaintiffs photos of the second story roof depicting no wind damage, no missing or creased shingles, and no hail impact marks with the exception of the aluminum power vent covers; (7) a slippage issue existed on the left upper slope of the home which was either the result of installation error or normal wear and tear; (8) while some shingles on the second story roof had reached their life expectancy and were beginning to show normal signs of wear, there was no storm damage to the roofing system; (9) interior leaks occurred over time as the result of the roofing system gradually wearing out, not the result of accidental direct physical loss; (9) Plaintiffs' policy only covered accidental direct physical loss; and (10) Plaintiffs' policy provided that any action against Defendant must be commenced within one year after the date of damage.  Am. Compl. Ex. 2.

Thereafter, Plaintiffs engaged Michael Vestal ("Vestal"), a public adjuster, who provided Defendant with photographs showing hail strikes to the roof and siding.  Am. Compl. ¶¶ 20, 23. Defendant advised Plaintiffs that the siding damage appeared to be caused by stones being ejected from a lawnmower or other objects being thrown against the home.  Am. Compl. ¶ 24. Plaintiffs also obtained estimates for repair of the storm damage from DiMatteo Builder Services, who assessed the damages to Plaintiffs' home at $41,102.00 for the roof and interior damage to the kitchen and hallway, and $22,665.00 for the siding.  Am. Compl. ¶ 22.

Plaintiffs commenced this action in the Court of Common Pleas of Westmoreland County.  State Farm timely removed the case to this Court and filed a motion to dismiss the complaint.  Rather than responding to the motion, Plaintiffs filed a First Amended Complaint on or about June 26, 2012.  (Document No. 4) ("Amended Complaint").  Plaintiffs' Amended Complaint alleges four counts: breach of contract (Count I), breach of duty of good faith and fair dealing (Count II), statutory bad faith under 42 Pa. C.S.A. § 8371 (Count III), and violation of

the Pennsylvania Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 Pa.

Cons. Stat. Ann. § 201-1 et seq.

Defendant moves to dismiss Counts II, III, and IV of Plaintiffs' Amended Complaint

pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon

which relief can be granted.  Def.'s Mot. to Dismiss ¶ 2.  Specifically, State Farm alleges that

Count II (breach of duty of good faith and fair dealing) is:  (1) barred by the "gist of the action"

doctrine because the claim arises from and is solely based on a contractual duty, and (2) is

duplicative of, and subsumed by Count I (breach of contract).  Def.'s Mot. to Dismiss ¶¶ 3, 4.

With regard to Count III (statutory bad faith), Defendant alleges that Plaintiffs have failed to

plead factual matter sufficient to state a claim against Defendant that is plausible on its face.

Def.'s Mot. to Dismiss ¶ 5.  As to Count IV (violation of the UTPCPL), Defendant alleges that

(1) the claim is based on nonfeasance, rather than misfeasance, which is not actionable under the

UTPCPL, or, in the alternative, (2) Plaintiffs have failed to plead factual matter sufficient to state

a claim against Defendant that is plausible on its face.  Def.'s Mot. to Dismiss ¶ 6.  Plaintiffs

oppose Defendant's motion as to each count.

## STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a

claim for relief which contains a short and plain statement of the claim showing that the pleader

is entitled to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Federal Rule of

Civil Procedure 12(b)(6) provides for dismissal of a complaint, in whole or in part, for failure to

state a claim upon which relief can be granted.  When a court considers a motion to dismiss

under Fed. R. Civ. P. 12(b)(6), it must view all allegations stated in the complaint as true, and

construe all inferences in the light most favorable to the plaintiff.  *Simmons v. Nationwide Mut.*

4

*Fire Ins. Co.*, 788 F. Supp. 2d 404, 406 (3d Cir. 2011) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *see also Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993)).  However, the court need not "credit a complaint's 'bald assertions' or 'legal conclusions.'"  *Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Legal conclusions lacking factual support are not entitled to the assumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 556–557 (noting the court need not accept legal conclusions cast as factual allegations); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–211 (3d Cir. 2009) (noting that a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions").

A complaint should not be dismissed if, accepting as true all of the factual allegations in the complaint, a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  To meet this standard, a plaintiff must allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of a claim.  *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999).  However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents that are referenced in the complaint or that are essential to a plaintiff's claim  which are attached to a defendant's motion.  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Under this standard, the exhibits

attached to Plaintiffs' complaint, including correspondence between Plaintiffs and the

Independent Adjusters regarding inspections of Plaintiffs' property, estimates of damage from

DiMatteo Builder Services, and photographs taken by public adjuster Michael Vestal may be

considered by the court without converting the motion to dismiss into a motion for summary

judgment.  *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196-97.

LEGAL ANALYSIS

A. <u>Count II – Breach of Duty of Good Faith and Fair Dealing</u>

In its Brief in Support of Defendant's Motion to Dismiss ("Def.'s Br."), State Farm

argues that Plaintiffs' claim for breach of duty of good faith and fair dealing (Count II) is barred

by the gist of the action doctrine, as "Plaintiffs are attempting to re-cast a breach of an insurance

contract claim as a common law tort claim."  Def.'s Br. 6.  Plaintiffs, on the other hand, argue

that Pennsylvania courts have recognized a duty to act in good faith in the context of "the

relationship between insurer and insured."  Pls.' Br. in Opp'n 4 (citing *Gray v.  Nationwide Mut.*

*Ins. Co.*, 223 A.2d 8 (1966); *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 188 A.2d 320 (1963)).

The argument of Plaintiffs and citation to authority disregards a crucial point.  The

question before this Court is not whether a duty of good faith and fair dealing ***exists***, but whether

that cause of action exists ***independently*** from Plaintiffs' breach of contract claim (Count I) in

this case.  The Court concludes that it does not.

Initially, the Court notes that the existence of a contract between parties does not

automatically preclude one party from bringing a tort claim against the other.  See *Bohler-*

*Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104 (3d Cir. 2001).  However, the

Pennsylvania Superior Court has emphasized that the gist of the action doctrine "is designed to

maintain the conceptual distinction between breach of contract claims and tort claims" by

precluding "plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002).   "Tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Id.* (quoting *Bash v. Bell Tel. Co.*, 601 A.2d 825, 829 (Pa. Super. Ct. 1992)).   Specifically, the doctrine serves to bar tort claims:

1) arising solely from a contract between the parties,

2) where the duties allegedly breached were created and grounded in the contract itself,

3) where the liability stems from a contract, or

4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*PPG Indus., Inc. v. Generon IGS, Inc.*, 760 F. Supp. 2d 520, 527 (W.D. Pa. 2011) (citing *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. Ct. 2005)).

Thus, in determining whether a claim is barred by the gist of the action doctrine, the critical question before the court is whether the "'gist' or gravamen of [the claim] sounds in contract or in tort." *Sunquest Info. Sys., Inc. v. Dean Witter Reynolds, Inc.*, 40 F. Supp. 2d 644, 651 (W.D. Pa. 1999).   Where the duties of the parties are "defined by the terms of the contract, and not by the larger social policies embodied in the law of torts[,]" the claim must be limited to a contract claim.   *See Bash*, 601 A.2d at 830; *see also Sunquest Info. Sys. Inc.*, 40 F. Supp. 2d at 651 ("a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious").

Here, Plaintiffs' claim for breach of duty of good faith and fair dealing stems from the alleged "refus[al] to provide [insurance] coverage under the terms of the [policy]" by State Farm.

Am. Compl. ¶ 36(a).  Defendant's duty to pay benefits to Plaintiffs clearly arises from the contract between the parties, i.e., the policy.  Moreover, Plaintiffs argue that the gist of the action doctrine does not bar the claim because Defendant's conduct was "so egregious as to constitute a breach of the duty to act in good faith ***that the contract imposes upon them***."  Pls.' Br. in Opp'n 4 (emphasis added).  In this argument, Plaintiffs appear to concede that the duty allegedly breached was imposed upon the Defendant by the contract itself, and not from any duty "imposed by law as a matter of social policy."  *See eToll, Inc.*, 811 A.2d at 14 (quoting *Bash*, 601 A.2d at 829).  Absent the insurance policy to which Plaintiffs and Defendant mutually assented, Defendant was under no obligation to perform, or not perform, any of the actions that form the basis of Plaintiffs' breach of duty of good faith and fair dealing claim.

The Court also agrees with Defendant that to the extent Count II alleges a claim for common law bad faith, it must be dismissed.  *See D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.*, 431 A.2d 966, 970 (1961) (declining to create a common law tort action for bad faith); *LSI Title Agency, Inc. v. Evaluation Servs., Inc.*, 951 A.2d 384, 391 (Pa. Super. Ct. 2008) (noting that Pennsylvania law does not recognize a separate bad faith claim where the claim is subsumed by a separately pled breach of contract claim); *JHE, Inc. v. SEPTA*, 2002 WL 1018941 at *5 (Phila. Ct. Com. Pl. May 17, 2002) (noting "a claim arising from a breach of the covenant of good faith must be prosecuted as a breach of contract claim, as the covenant does nothing more than imply certain obligations into the contract itself").  Accordingly, Defendant's motion to dismiss Count II of the Amended Complaint will be **GRANTED**.

B.  Underscore{Count III – Statutory Bad Faith}

Although Pennsylvania has expressly declined to recognize a common law tort action for

bad faith, *D'Ambrosio*, 431 A.2d at 970, Pennsylvania specifically provides a statutory remedy

against insurers for bad faith.  42 Pa. C.S.A. § 8371.  Section § 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer
> has acted in bad faith toward the insured, the court may take all of the following
> actions:
>
>> (1)  Award interest on the amount of the claim from the date the claim was
>> made by the insured in an amount equal to the prime rate of interest
>> plus 3%.
>>
>> (2)  Award punitive damages against the insurer.
>>
>> (3)  Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.  Section § 8371 does not define "bad faith;" however, in *Keefe v.*

*Prudential Prop. & Cas. Ins. Co.*, 203 F.3d 218, 225 (3d Cir. 2000), the United States Court of

Appeals for the Third Circuit has predicted that the Pennsylvania Supreme Court would adopt

the definition set forth in *Terletsky v. Prudential Prop. & Cas. Ins. Co.*:

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay
> proceeds of a policy; it is not necessary that such refusal be fraudulent.  For
> purposes of an action against an insurer for failure to pay a claim, such conduct
> imports a dishonest purpose and means a breach of a known duty (i.e. good faith
> and fair dealing), through some motive of self-interest or ill will; mere negligence
> or bad judgment is not bad faith.

649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting *Black's Law Dictionary* 139 (6th ed. 1990))

(citations omitted).

Under § 8371, bad faith "will be found where the insurer did not have a reasonable basis

for denying benefits under the policy and the insurer knew of or recklessly disregarded its lack of

reasonable basis for denying the claim." *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d

201, 215 (W.D. Pa. 2010) (citing *Oehlmann v. Metro. Life Ins. Co.*, 644 F. Supp. 2d 521, 528

(M.D. Pa. 2007).  To successfully plead a cause of action under § 8371, mere insinuations of bad faith are not sufficient; rather, Pennsylvania law requires clear and convincing evidence.  *See Liberty Ins. Corp. v. PGT Trucking, Inc.*, 2011 WL 2552531 at *4 (W.D. Pa. 2011) (citing *Terletsky*, 649 A.2d at 688); *see also O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999) (noting that clear and convincing evidence is required to successfully bring a claim of bad faith under § 8371).  Consistent with the pleading standards set forth in *Twombly* and *Iqbal*, "conclusory" or "bare-bones allegations" of bad faith will not survive a motion to dismiss.  *See Fowler*, 578 F.3d at 210.

Defendant contends that Plaintiffs have "failed to allege sufficient facts to show that they are entitled to relief," as they "have merely stated conclusory allegations," Def.'s Br. 8, 10. Plaintiffs argue that the Amended Complaint lists fourteen "separate allegations of [b]ad [f]aith conduct[,]" which "clearly set forth allegations, if accepted [as true] will be clear and convincing evidence of bad faith conduct on behalf of Defendant." Pls.' Br. 5–6.  Plaintiffs "remind" the Court that under Fed. R. Civ. P. 12(b)(6), it is "required to accept all allegations set forth as being true." Pls.'s Br. 7.  This is a misstatement of the law.  The Court may properly credit only ***factual*** allegations, and need not accept legal conclusions as true.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–557.

Here, Plaintiffs have supported their claim under § 8371 almost exclusively with conclusory allegations and boilerplate language.  *See* Am. Comp. ¶ 39(a)–(l), (n).  These conclusory allegations do not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*,  550 U.S. at 556).  As this additional factual support is lacking, these allegations alone are not sufficient to withstand a motion to dismiss.

Plaintiffs do, however, claim that "Defendant has attempted to deceive the Plaintiffs by having their employees sign letters to Plaintiff and other policy holders with the title 'Independent Adjuster' when the employees were clearly not independent and were in fact employees of Defendant." Am. Compl. ¶ 49. In reviewing the letters sent from each independent adjuster to Plaintiffs, attached by Plaintiffs to the Amended Complaint as Exhibits 1 and 2, the Court makes the following observations: (1) both letters are written on State Farm company letterhead, and prominently display the State Farm logo and address; (2) both letters state, directly under the adjuster's signature and "Independent Adjuster" designation, the name of the company, "State Farm Fire and Casualty Company," and (3) the language of both letters clearly indicates that the adjusters were working for, or on behalf of, Defendant:

a. "At this time, *we are* paying your claim…" Am. Compl. Ex. 1 (emphasis added).

b. "To make a claim…you must…*notify us* within 30 days..." Am. Compl. Ex. 1 (emphasis added).

c. "Simply return the enclosed Explanation…*to us*…" Am. Compl. Ex. 1 (emphasis added).

d. "*State Farm agrees* there is covered damage caused by hail to two aluminum power vent covers and a window. *We found* no wind or hail damage to the shingles." Am. Compl. Ex. 2 (emphasis added).

e. "*Our insuring agreement* reads…" Am. Compl. Ex. 2 (emphasis added).

f. "*State Farm agrees* the storm did cause damage to the areas which *we* have itemized in *our* estimate." Am. Compl. Ex. 2 (emphasis added).

g. "*[W]e are* unable to make payment…" Am. Compl. Ex. 2 (emphasis added).

h. "Before reaching this decision, *we conducted* a thorough investigation and considered

11

all information you provided *to us*."  Am. Compl. Ex. 2 (emphasis added).

Based on the foregoing, the Court finds that this single factual allegation is insufficient to establish a claim of bad faith under § 8371.

Similarly, Plaintiffs' assertion that Defendant "[f]alsely claim[ed] that the damage to the siding of Plaintiffs' home was caused by actions of Plaintiffs," Am. Compl. ¶ 39(m), when "Defendant's employee told Plaintiffs that the damage to the siding was not caused by the storm/hail and appeared to be either the result of stones being ejected from a lawn mower or caused by Plaintiffs or another party throwing objects against the home," Am. Compl. ¶ 24, is not sufficient to allow Plaintiffs' statutory bad faith claim under § 8371 to survive.  This issue may warrant further factual development as to the breach of contract claim, but does not establish that State Farm acted in bad faith.  Accordingly, Defendant's motion to dismiss Count III of the Amended Complaint will be **GRANTED**.


C.  Count IV – Violation of the UTPCPL

Defendant contends that Plaintiffs' UTCPCL claim must be dismissed because it is "premised on the non-payment of their claim, and non-payment of policy claims is not actionable under the UTPCPL."  Def.'s Br. 13.  In the alternative, Defendant argues that Plaintiffs have failed to plead sufficient facts to make the claim plausible on its face under the pleading standards set forth by *Twombly* and Fed. R. Civ. P. 9(b).  Def.'s Br. 16.  Plaintiffs contend that Defendant violated its "duty to refrain from unfair and deceptive activities pursuant to the homeowners' insurance that was purchased by Plaintiffs," Am. Compl. ¶ 53, and argue that the Amended Complaint sets forth "six separate and distinct misrepresentations that would constitute violation of the [UTCPCL]."  Pls.' Br. 6.  Specifically, Plaintiffs allege that Defendant violated

the following provisions of the UTPCPL:

    (1) § 2012-2(4)(v): "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;"

    (2) § 201-2(4)(ix): "Advertising goods or services with intent not to sell them as advertised;"

    (3) § 201-2(4)(xiv): "Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;"

    (4) § 201-2(4)(xxi): "Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

73 Pa. Cons. Stat. Ann. § 201-2(4)(v), (ix), (xiv), (xxi).

    "The 'underlying foundation' of the UTPCPL 'is fraud prevention.'" *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 140 (3d Cir. 2005) (quoting *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (2001)).  It is well settled in Pennsylvania that "only malfeasance, improper performance of contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim[,] which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." *Horowitz v. Fed. Kemper Life. Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pa. Blue Shield*, 548 A.2d 600, 604 (Pa. Super. Ct. 1988)) (citations omitted); *see also Leo v. State Farm Mut. Auto. Ins. Co.*, 939 F. Supp. 1186, 1193 (E.D. Pa. 1996); *Klinger v. State Farm Mut. Auto. Ins. Com.*, 895 F. Supp. 709, 717–718 (M.D. Pa. 1995).

    Here, the Amended Complaint sets forth six alleged violations of the UTPCPL.  Am. Compl. ¶ 54(a)–(f).  The first three allegations specifically cite the failure to pay property damage benefits, and the failure to pay property damage benefits in a timely manner as the basis for the violation of the UTPCPL claim.  Am. Compl. ¶ 54(a)–(c).  As such, these allegations

constitute nonfeasance, and are not actionable under the UTPCPL.[3] *See e.g. Horowitz*, 57 F.3d at 307.

The fourth allegation is that Defendant engaged in "deceptive conduct which created the likelihood of confusion and misunderstanding." Am. Compl. ¶ 54(d). This is entirely conclusory. Fifth, Plaintiffs allege that Defendant had its "employees refer to themselves as 'Independent Adjusters' so [it] could create confusion, misunderstanding or a false impressions [sic] that these employees were not employed by Defendant." Am. Compl. ¶ 54(e). For the same reasons that this factual allegation is insufficient to establish a claim of statutory bad faith under § 8371, the Court finds that it similarly falls short of establishing a violation of the UTPCPL.

Finally, Plaintiffs claim that Defendant violated the UTPCPL by failing "to timely warn Plaintiffs about the statute of limitations." Am. Compl. ¶ 54(f). Plaintiffs have provided no factual allegations to support this claim, nor pointed the Court to any authority indicating that Defendant had such a duty. Indeed, the Court notes that in Exhibit 2 of the Complaint, adjuster St. John appears to quote the statute of limitations provision from the Plaintiffs' existing policy,[4] negating any inference that Defendant intentionally attempted to conceal the statute of limitations from Plaintiffs as they allege.

The Court disagrees with State Farm's contention that Plaintiffs must "state with

---

[3] The Court additionally notes that these allegations are conclusory and not supported by any factual allegations. They would therefore not withstand a motion to dismiss according to the pleading standards set forth in *Twombly* and *Iqbal*.

[4] The letter from adjuster St. John to Plaintiffs contains the following excerpt from Plaintiffs' policy setting forth the statute of limitations for filing suit against Defendant:

**SECTION I – CONDITIONS**

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

Am. Compl. Ex. 2.

particularity the circumstances constituting fraud" as required by the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.  Def.'s Br. 16.  The Court finds that Plaintiffs need not meet this standard with respect to the claim for violation of § 201-2(4)(xxi) of the UTPCPL.   Subsequent to its amendment in 1996, Section 201-2(4)(xxi) of the UTPCPL prohibits "fraudulent *or deceptive conduct* which creates a likelihood of confusion or of misunderstanding."  73 P.S. § 201-2(4)(xxi) (emphasis added).  The Superior Court of Pennsylvania recently held that the heightened pleading standard of Rule 9(b) is not required to state a cause of action under this catchall provision of the UTPCPL.  *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 154–55 (Pa. Super. Ct. 2012); *see also Trunzo v. Citi Morg.*, 2012 WL 2405257 at *15 (W.D. Pa. June 25, 2012) ("[S]ection 201-2(4)(xxi) does not require a litigant to plead the elements of common law fraud.").  In order to maintain a cause of action for violation of § 201-2(4)(xxi) here, Plaintiffs need only assert "sufficient facts at this stage in the proceedings to show that confusion or misunderstanding could reasonably arise from [Defendant's] actions and that [Plaintiffs] were indeed misled by those actions."  *See Trunzo*, 2012 WL 2405257 at * 16.  Nevertheless, as explained above Plaintiffs have failed to meet even this less stringent standard.  Accordingly, Defendant's motion to dismiss Count IV of the Amended Complaint will be **GRANTED**.


D.  Subject-Matter Jurisdiction

Federal courts have a non-delegable duty to ensure that they may exercise subject-matter jurisdiction over a case.  The sole remaining claim in this case is for breach of contract under Pennsylvania law.  It appears to a legal certainty, from the Amended Complaint and exhibits attached thereto, that the amount in controversy is now substantially less than the diversity

jurisdiction threshold of $75,000.  28 U.S.C. § 1332(a).  Pursuant to 28 U.S.C. § 1447(c), "if at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  *See generally Samuel-Bassett v. KIA Motors America, Inc.,* 357 F.3d 392, 396 (3d Cir. 2004) (discussing remand of case removed based on diversity jurisdiction).  Accordingly, this case will be remanded forthwith to the Court of Common Pleas of Westmoreland County, Pennsylvania.

CONCLUSION

For the reasons hereinabove stated, Defendant's Motion to Dismiss, (Document No. 5), will be **GRANTED**.  This case will be remanded forthwith to the Court of Common Pleas of Westmoreland County, Pennsylvania.

An appropriate order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON TIMOTHY and JESSICA TIMOTHY,** | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **02:12-cv-732** |
| | ) | |
| **STATE FARM FIRE AND CASUALTY COMPANY,** | ) | |
| Defendant. | ) | |

## ORDER OF COURT

AND NOW, this 23rd day of August, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS COUNTS II, III, AND IV OF PLAINTIFFS' AMENDED COMPLAINT is **GRANTED.** As the amount in controversy is now below the diversity jurisdiction threshold, this case is hereby **REMANDED** to the Court of Common Pleas of Westmoreland County, Pennsylvania.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:    Bruce H. Gelman, Esquire
       Email: BruceGelman@AOL.com
       Sean J. Carmody, Esquire
       Email: scarmody@patbergcarmodyging.com
       Ansley S. Westbrook, II
       Email: ansley.westbrook@dinslaw.com